**DISCOVERY PATENT HOLDINGS, LLC, et al., Plaintiffs,**

v.

**AMAZON.COM, INC., et al., Defendants.**

**Civil Action No. 10–600–ER.**

United States District Court, D. Delaware.

Feb. 4, 2011.

Elena C. Norman, Jeffrey Thomas Castellano, Young, Conaway, Stargatt & Taylor, Wilmington, DE, Brent P. Lorimer, Pro Hac Vice, Workman Nydegger, Sterling A. Brennan, Pro Hac Vice, Salt Lake City, UT, Deok Keun M. Ahn, Pro Hac Vice, Morrison & Foerster LLP, San

Francisco, CA, Michael A. Jacobs, Pro Hac Vice, Seth W. Black, Pro Hac Vice, for Plaintiffs.

Richard L. Horwitz, David Ellis Moore, Potter Anderson & Corroon, LLP, Wilmington, DE, Brian Ankenbrandt, Pro Hac Vice, Brooke L. Myers, Pro Hac Vice, Jason C. Lo, Pro Hac Vice, Josh A. Krevitt, Pro Hac Vice, Mark Reiter, Pro Hac Vice, Sarah E. Piepmeier, Pro Hac Vice, Stuart M. Rosenberg, Pro Hac Vice, Y. Ernest Hsin, Pro Hac Vice, for Defendants.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

## I.  INTRODUCTION

Plaintiff Discovery Communications, Inc., ("Discovery" or "Plaintiff") initiated this action against Defendant Amazon.com, Inc. ("Amazon" or "Defendant"), alleging infringement of two of its patents in violation of 35 U.S.C. § 271 and seeking injunctive relief, and compensatory and punitive damages.[1]

Before the Court are both parties' briefing on claim construction with proffered definitions for disputed claim terms. For the reasons set forth below, the Court defines the claim terms as set out in the conclusion.

## II.  BACKGROUND

On March 17, 2009, Plaintiff Discovery Communications, Inc., initiated this action against Defendant Amazon.com, Inc., alleging infringement of Discovery's '851 Patent in violation of 35 U.S.C. § 271 and seeking injunctive relief and compensatory and punitive damages. Discovery contends that Amazon is required to obtain a license to "make, use, sell, offer for sale and/or import products" under numerous patents in Amazon's E-book Patent Portfolio (including but not limited to the Kindle, the Kindle 2, and the content of other e-books).[2] *Id.*

On May 15, 2009, Amazon filed its Answer, asserting defenses and counterclaims. (Doc. no. 7.) Therein, Amazon asserted the following four defenses: (1) non-infringement of the '851 patent; (2) invalidity/unenforceability of the '851 patent; (3) inequitable conduct engaged in by Discovery in withholding material information to the USPTO regarding prosecution of the '851 patent; and (4) patent misuse. (*Id.*) Amazon also alleges patent infringements by Discovery, in the area of electronic commerce ("e-commerce") and its underlying technology, seeking declaratory relief and compensatory and punitive damages.

On July 14, 2010, Discovery filed a second, separate complaint alleging infringement of its '690 patent. On August 17, 2010, the Court consolidated both of Discovery's complaints and Amazon's counterclaims into this action.

Originally, eight patents were at issue.[3] However, there are currently only four

---

1.  The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338.

2.  On October 2, 2008, Plaintiff sent Defendant a letter identifying the infringing conduct and products, and alleging that certain patents for products Defendant was using and/or selling required a license. (Doc. no. 7 at 17.)

3.  As referenced in the pleadings, the disputed patents were as follows:

- Count I:      *The '141 Patent* is entitled "Internet–Based Customer Referral System," issued on Feb. 2, 2000

- Count II:     *The '133 Patent* is entitled "Internet–Based Customer Referral System," issued on Feb. 26, 2000

- Count III:    *The '851 Patent* is entitled "Electronic Book Security and Copyright Protection System," issued on Nov. 20, 2007, seeking declaratory relief based on disputed liability, patent

patents to be construed by the Court: Discovery's patents '690 and '851 ("Discovery Patents"); and Amazon's patents '141 and '133 ("Amazon Patents").

### A. Discovery Patents

Discovery's '690 Patent is entitled "Electronic Book Selection and Delivery Service" and was issued on Nov. 15, 1999. The '690 Patent describes a "method of distributing electronic books to a portable book-shaped viewing device." (*See* Pl. Br. 2.) The '690 Patent's disclosure is comprised of (1) the viewing unit, and (2) the operations center that stores and transmits the e-books. (*See* Pl. Br. 2 (citing '690 Patent at 1:51–2:45).) The '690 Patent effectively transmits books to e-readers for reading, as opposed to physical book transportation.

Discovery's '851 Patent is entitled "Electronic Book Security and Copyright Protection System" and was issued on Nov. 20, 2007. The '851 Patent covers the same system as the '690 Patent, a "system and method of securely distributing electronic books to a portable book-shaped viewing device." However, the '851 Patent "details an encryption process for securing" the e-books transmitted to the viewing device. (*Id.* at 3.)

Specifically, the '851 Patent encrypts e-books by modifying unencrypted ("clear") text and transforming it into encrypted text ("ciphertext"); the reverse is done for encrypted text. (*See* Def. Br. 4.) The '851 Patent is comprised of (1) an operations center to store/transmit e-books, and (2) a device to view the books.

### B. Amazon Patents

Amazon's '141 Patent is entitled "Internet–Based Customer Referral System" and issued on February 2, 2000. Amazon's related '133 Patent is entitled "Internet–Based Customer Referral System" and issued on February 26, 2000.

Amazon describes the '141 and '133 Patents as creating technological outpaths from the e-merchant's website (here, Amazon) to associates' websites (the referring entities) that avoids costly impediments for the e-merchant, such as having the burden of reviewing the associates' sites and having to pay for conventional advertising. (*Id.* at 8.) Thus, the associate is able to get referrals to its website (and products) from Amazon.com in exchange for a commission. Associates are also able to generate feedback reports regarding the success of their referrals. (*Id.* at 10.)

### C. Procedural History

On March 12, 2010, the Court issued an amended scheduling order, regarding the

invalidity, inequitable conduct and patent misuse

- Count IV: *The '690 Patent* is entitled "Electronic Book Selection and Delivery Service,"* issued on Nov. 15, 1999, seeking declaratory relief on the same bases

- Count V: *The '173 Patent* is entitled "Portable Electronic Book Viewer,"* issued to John S. Hendricks on April 29, 2003, seeking declaratory relief on the same bases

- Count VI: *The '501 Patent* is entitled "Electronic Book Selection and Delivery System Having Encryption and Security Features,"* issued to John S. Hendricks on Nov. 20, 2007, seeking declaratory relief on the same bases

- Count VII: *The '788 Patent* is entitled "Electronic Book Secure Communication with Home Subsystem,"* issued to John S. Hendricks on Feb. 26, 2008, seeking declaratory relief on the same bases

- Count VIII: *The '286 Patent* is entitled "Electronic Book Electronic Links,"* issued to John S. Hendricks and Michael Asmussen on July 15, 2008, seeking declaratory relief on the same bases.

*Markman* hearing and claim construction. (Doc. no. 89.) Both parties filed their claim construction briefing and on May 21, 2010, the Court held the *Markman* hearing.

## III. DISCUSSION

Before the Court are both parties' briefing on claim construction with proffered definitions for disputed claim terms. The following claims are contested by the parties and contain terms which the Court must define:

- '690 Patent:     Claims 39, 40

- '851 Patent:     Claims 1, 34, 36, 38, 39, 45, 56, 61, 82, 96, 107, 110, 119, 122, 123

- '141 Patent:     Claims 1, 2, 7, 9, 10, 13, 14, 15, 16, 17, 18, 19, 21, 23, 24, 25, 26, 27, 28, 29, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42

- '133 Patent:     Claims 1, 2, 5, 8, 9, 18, 21, 22, 23, 24, 25

A. Legal Principles of Claim Construction

■ A court's analysis of patent infringement is comprised of a well-established two-step process: (1) the meaning of disputed claims are construed; and (2) the allegedly infringing device is compared to the claims as construed. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed.Cir.1995), aff'd, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996); *Wavetronix LLC v. EIS Electronic Integrated Sys.*, 573 F.3d 1343, 1354 (Fed.Cir.2009). With respect to the first step, "[t]he purpose of claim construction is to determine the meaning and scope of the patent claims that the plaintiff alleges have been infringed." *Every Penny Counts, Inc. v. American Express Co.*, 563 F.3d 1378, 1382 (Fed. Cir.2009) (citing *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed.Cir.2008)).

■ It is axiomatic that the claims define the scope of the patent. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed.Cir. 2005) (en banc) (internal citations omitted); see also, *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed.Cir.2004); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed.Cir.1996). Therefore, the Court must first look to the words of the claims themselves in order to ascertain their meaning. *Vitronics Corp.*, 90 F.3d at 1582; see also *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed.Cir.1998) ("[T]he claims define the scope of the right to exclude; the claim construction inquiry, therefore, begins and ends in all cases with the actual words of the claim.").

1. Plain and Ordinary Meaning

■ Claim terms must be initially interpreted according to their ordinary and customary meaning. *Genzyme Corp. v. Transkaryotic Therapies, Inc.*, 346 F.3d 1094, 1106 (Fed.Cir.2003). Undefined claims terms are to be given an ordinary and customary meaning "as understood by a person of ordinary skill in the art at the time of the invention." *Gemtron Corp. v. Saint–Gobain Corp.*, 572 F.3d 1371, 1378 (Fed.Cir.2009). As explained by the Federal Circuit:

> Because the meaning of a claim term as understood by persons of skill in the art is often not immediately apparent, and because patentees frequently use terms idiosyncratically, the court looks to 'those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean,' including 'the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art.'

*Phillips,* 415 F.3d at 1314 (quoting *Innova,* 381 F.3d at 1116).

## 2. Intrinsic Evidence

■ Where a court cannot properly construe a claim based on the plain meaning, it is necessary to examine the intrinsic record of the claims, which includes the specification and the prosecution history. *Masco Corp. v. United States,* 303 F.3d 1316, 1324 (Fed.Cir.2002) ((citing *Vitronics Corp.,* 90 F.3d at 1582) (holding such intrinsic evidence to be "the most significant source of the legally operative meaning of disputed claim language.")). The specification contains a written description of the invention which must be clear and complete enough to enable those of ordinary skill in the art to make and use it. Thus, the specification provides necessary context for understanding the claims, and "is always highly relevant to the claim construction analysis." *Phillips,* 415 F.3d at 1315 (quoting *Vitronics Corp.,* 90 F.3d at 1582). Therefore, a patentee can act as his own lexicographer in the patent specification by defining a term with particularity that already has an ordinary meaning to a person of skill in the art. *Merck & Co., Inc. v. Teva Pharma. USA, Inc.,* 395 F.3d 1364, 1370 (Fed.Cir.2005) (internal citation omitted); *Phillips,* 415 F.3d at 1321 ("[T]he specification 'acts as a dictionary when it expressly defines terms used in the claims.'" (internal quotation omitted)).

■ Further, "[w]hen consulting the specification to clarify the meaning of claim terms, courts must take care not to import limitations into the claims from the specification." *Abbott Labs. v. Sandoz, Inc.,* 566 F.3d 1282, 1288 (Fed.Cir.2009). Limitations contained in the specification should be applied judiciously and courts should refrain from restricting broader claim language to a single embodiment described in the specification, "unless the patentee has demonstrated a clear intention to limit the claim scope using 'words

or expressions of manifest exclusion or restriction.'" *Id.* (quoting *Liebel–Flarsheim Co. v. Medrad, Inc.,* 358 F.3d 898, 906 (Fed.Cir.2004)); *see also Bell At. Network Servs., Inc. v. Covad Commc'ns Group, Inc.,* 262 F.3d 1258, 1271 (Fed.Cir. 2001) ("[W]hen a patentee uses a claim term throughout the entire patent specification, in a manner consistent with only a single meaning, he has defined that term 'by implication.'" (internal quotation omitted)).

■ Along with the specification, the prosecution history is "intrinsic evidence" of the meaning of the claims, because it "provides evidence of how the [United States Patent & Trademark Office ("PTO")] and the inventor understood the patent." *Phillips,* 415 F.3d at 1317. The prosecution history is comprised of the original application, communications between the patent applicant and the patent examiner, changes to the patent application, prior art cited during the patent examination, and other pertinent documents. *See Rheox, Inc. v. Entact, Inc.,* 276 F.3d 1319, 1326 (Fed.Cir.2002) (noting that the totality of the prosecution history includes "amendments to claims and arguments made to overcome or distinguish references.") (citing *Elkay Mfg. Co. v. Ebco Mfg. Co.,* 192 F.3d 973, 979 (Fed.Cir. 1999)).

Though ambiguities during negotiations between the PTO and inventor may occur, "the prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Abbott Labs.,* 566 F.3d at 1288 (quoting *Phillips,* 415 F.3d at 1317). Statements made during prosecution can serve to disavow the scope of the patent, but only in situations where

the disclaimer is unambiguous. *See id.*; *Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1374 (Fed.Cir.2008) ("[A] patentee may limit the meaning of a claim term by making a clear and unmistakable disavowal of scope during prosecution.") (*quoting Purdue Pharma L.P. v. Endo Pharms., Inc.*, 438 F.3d 1123, 1136 (Fed.Cir.2006)); *Southwall Tech., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir.1995) ("The prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution.") (citations omitted).

### 3. *Extrinsic Evidence*

█ Beyond the claim language itself and the intrinsic record, a court is permitted to rely on extrinsic evidence, consisting of "all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Markman*, 52 F.3d at 980. Extrinsic evidence is to be used to aid in a court's interpretation of the claim language, but "not for the purpose of varying or contradicting the terms of the claim." *Id.* (internal citation omitted); *see Phillips*, 415 F.3d at 1317 (extrinsic evidence is "less significant than the intrinsic record").

## B. *Undisputed Claim Terms*

### 1. *Discovery Patents: '690 & '851 Patents*

| Patent(s) | Term | Agreed Position or Construction |
|---|---|---|
| '851 Patent | cryptographic algorithm | "an operation used to encrypt or decrypt" |
| '851 Patent | encryption/ decryption algorithm | "an operation used to encrypt or decrypt" |
| '851 Patent | decryption key | "data used to decrypt encrypted information" |
| '851 Patent | encryption key | "data used to encrypt information" |
| '851 Patent | electronic book source | "a location from which textual or graphical information of a book is electronically transmitted" |
| '690 Patent | text source | "a location from which textual or graphical information of a book is electronically transmitted" |
| '851 Patent / '690 Patent | upon demand | No construction necessary. |
| '851 Patent | supplying a selected electronic book corresponding to the selected title to be encrypted | No construction necessary. |

### 2. *Amazon Patents: '141 and '133 Patents*

| Patent(s) | Term | Agreed Position or Construction |
|---|---|---|
| '141 Patent / '133 Patent | Web page | "interlinked, user-viewable hypertext document that is accessible via the Internet" |
| '141 Patent | using the associate identifier ... to identify the associate | No construction needed. |
| '141 Patent | computer implemented | No construction needed. |
| '141 Patent | automatically | No construction needed. |
| '141 Patent | generating ... a report/generates ... reports | No construction needed. |

## C. *Disputed Claim Terms*

### 1. *Discovery Patents: '690 & '851 Patents*

There are seven (7) disputed terms for Discovery's '690 and '851 Patents. The parties' proposed term constructions are as follows:

| Terms & Patent(s) | Discovery's Proposed Construction | Amazon's Proposed Construction |
|---|---|---|
| broadcast | No construction necessary. | "sent via a simultaneous transmission to |

| Term | Discovery's Proposed Construction | Amazon's Proposed Construction |
|---|---|---|
| | | "multiple recipients" |
| '851 Patent | If construed: "transmitted" | |
| book<br><br>'690 Patent<br>electronic book<br>'851 Patent | "an electronic version of the textual or graphical information contained in a work such as a novel, encyclopedia, article, magazine, newspaper, catalogue, periodical, or manual" | "an electronic version of the textual or graphical information contained in a work such as a novel, encyclopedia, article, magazine, newspaper, catalogue, periodical, manual, speech, law, court decision, or testimony" |
| encrypting the selected electronic book | No construction necessary. | "modifying the unencrypted text and graphics of an electronic book, making it unreadable" |
| '851 Patent | If construed: "encrypting data representing the text and graphics of an electronic book" | |
| decrypting the encrypted selected electronic book | No construction necessary. | "modifying the encrypted selected electronic book back to readable text and graphics" |
| '851 Patent | If construed: "decrypting the encrypted data representing text and graphics of an electronic book" | |
| information that allows encryption and decryption of the electronic book and encryption and decryption of the encryption and decryption keys<br>'851 Patent | No construction necessary. | "information that allows each of the following: (1) encryption of the electronic book, (2) decryption of the electronic book, (3) encryption of the encryption key, (4) decryption of the encryption key, (5) encryption of the decryption key, and (6) decryption of the decryption key" |
| key generator<br><br>'851 Patent | "a key generation process implemented using hardware or software, or a combination thereof" | "a process that creates encryption and decryption keys used to encrypt and decrypt an electronic book" |
| list of titles of available electronic books<br><br>'851 Patent | No construction necessary. | "list of titles of all books for which the text associated with the electronic book is available for transmission" |
| list of titles of available books<br><br>'690 Patent | | |

### a.  broadcast

| Discovery's Proposed Construction | Amazon's Proposed Construction |
|---|---|
| No construction necessary.<br><br>If construed: "transmitted" | "sent via a simultaneous transmission to multiple recipients" |

■ Discovery argues that Claim 110, '851 Patent claims an electronic book viewer "wherein the electronic books are *broadcast* to the electronic book viewer." (*See* Pl. Br. 8.) Discovery argues that the plain meaning of "broadcast" should be construed as "transmitted." Discovery argues that Amazon's construction limits the term to (1) chosen "features of exemplary embodiments" in the specification, that improperly excludes other embodiments; and (2) the doctrine of claim differentiation supports the contention that the term "broadcast" need not necessarily require "simultaneous transmission to multiple" e-book viewers. (*Id.* at 10.) Further, Discovery argues that Amazon's limitation requires "over-the-air television or direct satellite delivery method[s]," which contradicts the intrinsic evidence.

Further, Discovery argues that dictionary definitions supports its construction:

Broadcast: "3. To send a transmission or signal; transmit." ((*See* Pl. Br. 9) (citing The American Heritage Dictionary of the English Language, 3d Ed. at 241).) However, other definitions in that same dictionary are: "1. To transmit (a radio or television program) for public or general use. 2. To send out or communicate especially by radio or television .... 3. To make known over a wide area." (*Id.*)

Amazon, on the other hand, argues that the plain meaning of "broadcast" is a "way of transmitting information to multiple recipients simultaneously" as opposed to simply meaning "transmitted." (*See* Def. Br. 7.) Defendant argues that express claim language and specification show that "broadcast" means to go to multiple viewers at the same time. (*See Id.* (noting that claim 41 states that an e-book is "broadcast to multiple home systems simultaneously" and claim 129 states that "broadcasting the encrypted e-book to multiple home systems simultaneously").) Amazon argues that the specification further demonstrates that transmission methods of satellite television and over-the-air broadcast require that multiple recipient receive the transmission at the same time, which support of its definition of "broadcast." Lastly, Amazon argues that the extrinsic evidence of the dictionary definition supports its plain meaning definition:

> [B]roadcast: To send the same message simultaneously to multiple recipients. Broadcasting is a useful feature in e-mail systems. It is also supported by some fax systems.

((*See* Def. Br. 8) (quoting 1999 Random House Webster's Computer & Internet Dictionary).)

The plain meaning of "broadcast" best supports Amazon's construction of "broadcast": "sent via a simultaneous transmission to multiple recipients." (*See* Def. Br. 6–11); *see Lucent Tech., Inc. v. Extreme Networks, Inc.,* 367 F.Supp.2d 649, 672 (D.Del.2005) (construing "broadcast message" to mean "a message that is sent to all nodes in the network"); *see also Sportvision, Inc. v. SportsMEDIA Tech. Corp.,* Civ. No. 04–03115, 2006 WL 408634, *4, 2006 U.S. Dist. LEXIS 8995, *12 (N.D.Cal., Feb. 17, 2006) (defining "broadcast" as "a wide-spread distribution"). The presumption that different terms in the same claim have different meanings favor's Amazon's construction because Discovery uses both the term "broadcast" and "transmitted" within the same claim. *See Bancorp Services, LLC v. Hartford Life Ins. Co.,* 359 F.3d 1367, 1373 (Fed.Cir. 2004).

However, Amazon goes a step further introducing the word "simultaneous." Thus, the Court will adopt Amazon's construction without the "simultaneous" portion. That is, finding that "broadcast" means "sent to multiple recipients."

### b. book/electronic book

| Terms & Patent(s) | Discovery's Proposed Construction | Amazon's Proposed Construction |
|---|---|---|
| **book** | "an electronic version of the textual or graphical information contained in a work such as a novel, encyclopedia, article, magazine, newspaper, catalogue, periodical, or manual" | "an electronic version of the textual or graphical information contained in a work such as a novel, encyclopedia, article, magazine, newspaper, catalogue, periodical, manual, speech, law, court decision, or testimony" |
| '690 Patent **electronic book** '851 Patent | | |

The parties agree that: (1) the '690 and '851 Patents demonstrate that e-books are "a vehicle for delivering numerous categories of textual and graphical information;" (2) "e-books" consist of textual information and graphics; (3) "book" and "e-book" definitions are not just plain and ordinary meanings of the word "book" and

can include magazines, etc.; and (4) specific examples of "e-books" is broader that the '851 specification and includes more than just "a novel, encyclopedia, article, magazine, newspaper, catalogue, periodical or manual." (*(Id.* at 12) (citing Pl. Br. 7–8).)

Discovery argues that: (1) the express claim language of the '690 and '851 Patent support its definition of "book" and "electronic book;" (2) the explicit definitions in the specification supports its definitions; (3) "book" refers to "electronic textual and graphical information;" and (4) additional examples are "unnecessary and may be misleading to a jury." (*See* Pl. Br. 7.) Amazon, however, disagrees and argues that Discovery's limitation that "book" and "e-book" must include "published material or text" is improperly limiting. (*See* Def. Br. 13–14.)

Here, as both parties agreed that the plain and ordinary meaning of "book" does not apply, Amazon's broader definition that includes "speech, law, court decision or testimony" to be included in the meaning of "book" or "e-book" seems to prevail over Discovery's definition which would only include "published material or text." (*Id.* 12 (citing '851 Patent 1:61–2:6) (additional examples of e-books include "the President's speech, a new law, a court decision on abortion, or O.J. Simpson's testimony").) That the '851 Patent itself includes speech, law, common law, and testimony, demonstrates that the meaning of "books" is not distinguished from textual material and at a minimum, includes these additional items. Thus, the Court will adopt Amazon's definition.

### c. encrypting the selected electronic book

| Terms & Patent(s) | Discovery's Proposed Construction | Amazon's Proposed Construction |
|---|---|---|
| encrypting the selected electronic book | No construction necessary. | "modifying the unencrypted text and graphics of an electronic book, |
| '851 Patent | | making it unreadable" |
| | | If construed: "encrypting data representing the text and graphics of an electronic book" |

▮ Discovery argues that its construction is proper based on (1) the plain and ordinary meaning; (2) extrinsic evidence; and (3) intrinsic evidence. First, Discovery argues that Claim 1 of the '851 Patent involves "encrypting the selected electronic book" and that the word "encrypt" is so common to laypersons that it need not be construed. *See Orion IP, LLC v. Staples, Inc.*, 406 F.Supp.2d 717 737–38 (E.D.Tex.2005) (refusing to construe terms used in accordance with ordinary lay meanings).

Further, based on intrinsic evidence in the specification, the data to be encrypted can include "any 'string of digital bits,'" not just data that was not already encrypted. Discovery argues that other portions of the specification contemplate "dual-layered encryption" where the text to be encrypted is already encrypted. However, this does not mean that encrypted data be first unencrypted as already encrypted text can be dually encrypted. (*See* Pl. Br. 22.) Lastly, Discovery argues that, based on the extrinsic evidence, "encryption" does not require input by unencrypted data.

In response, Amazon argues that Discovery's construction (1) does not define the term "encrypting"; (2) allows textual material that is "to be encrypted" to already be encrypted; and (3) is unsupported by the claims and specification which instead support Amazon's construction. *See* Def. Br. 15.

First, Amazon argues the intrinsic evidence establishes that the e-books "entering the encryption process are unencrypted" since Claim 1 states "to be encrypted."

*See id.* (arguing that "to be" means "not yet encrypted"); *but see* Pl. Br. 22 (contending that already encrypted text can undergo dual-layer encryption). Amazon also argues that the specification explicitly states that clear text, not already encrypted text, is contemplated to be encrypted:

> A basic encryption process operates on a string of digit bits, or clear text, by modifying the clear text using a series of mathematical operations with both the clear text and a second string of bits, called an encryption key, as inputs, resulting in a third string of bits, called ciphertext.

(*See* Def. Br. 16 (citing '851 patent, 28:12–16); *see also* Figure 1.1, '851 Patent (displaying a flow chart of "plaintext" → "encryption" → "ciphertext" → "decryption" → "original plaintext").)

Second, Figure 19a of the '851 Patent displays a flowchart where it explicitly states that unencrypted text goes through an encryption and decryption process. ((*See* Pl. Piepmeier Decl. Ex. B, Applied Cryptology treatise) (explaining that the encryption process disguises clear text to hide its substance)); *see also Adv. Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed.Cir.2000) (finding that treatises incorporated by reference into the specification become part of the specification and are therefore part of the intrinsic record).

Third, Amazon argues that extrinsic evidence further supports its construction as Claim 83 of the '851 Patent states "non-book content" (a reply message) is already encrypted text to be encrypted twice, is distinguishable from the rest of the text of the e-books and is treated as such in the specification itself. (*See* Def. Br. 22.) Amazon argues that Claim 83 specifically refers to the e-book being "doubly encrypted" and that there is another "re-encryption," where it fails to state that explicit reference in any other claim. *See*

*Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed.Cir.1998) ("There is presumed to be a difference in meaning and scope when different words of phrases are used in separate claims." (internal citation omitted)).

The language in Discovery's '851 patent seems to support Discovery's argument: "encryption process operates on a string of digit bits, or clear text, by modifying the clear text." This language seems to suggest that the encryption process contemplated would encrypt different types of data. Amazon argues that the '851 Patent of Figure 19a shows that the process begins with "unencrypted content" means that this content is clear text. However, these are not the same. "Unencrypted content" only means the content, in whatever form it is in, before it undergoes this particular encryption process. Indeed, the fact that other claims relate specifically to "double encrypted" data supports Discovery's contention that its language was meant to be read more broadly to include data that was already encrypted. Additionally, encryption is understood by a lay person. Thus, the Court will adopt the definition, "encrypting data representing the text and graphics of an electronic book."

#### d. *decrypting the encrypted selected electronic book*

| Terms & Patent(s) | Discovery's Proposed Construction | Amazon's Proposed Construction |
| --- | --- | --- |
| **decrypting the encrypted selected electronic book** | No construction necessary. | "modifying the encrypted selected electronic book back to readable text and graphics" |
| '851 Patent | If construed: "decrypting the encrypted data representing text and graphics of an electronic book" | |

674

In regards to the constructions, Discovery contends that Amazon's proposed construction improperly limits the claim term to requiring that "decrypting ... yield readable text and graphics." ((*Id.*); *but see* ('851 Patent, 28:11–22 ("A reversing process exists using a fourth string of bits, called a decryption key, that, when input into a decryption process consisting of a second series of mathematical operations, along with the ciphertext, the resulting output is the original clear text string of digital bits.")).) Discovery argues that a "clear text string of digital bits" can be anything. (*See* Pl. Br. 25 (citing *Applied Cryptography*, 2d. Ed. at 2, Ahn Decl. Ex. 12 (noting that clear text or plaintext can be "whatever")).)

Amazon argues that, like the encryption argument, Discovery solely disagrees that the "decryption process must result in 'readable' text and graphics." *See* Def. Br. 23. However, based on the intrinsic record, Amazon argues that (1) the entire point of decryption is so the reader can "read the book," thus resulting in clear text; (2) the '851 specification states that "the resulting output [of decryption] is the original clear text string of digital bits"; and (3) the incorporated *Applied Cryptography* treatise elucidates the point that "the process of turning ciphertext back into plaintext is decryption." *See id.* 24.

For the reasons above, the Court will adopt Discovery's definition "decrypting the encrypted data representing text and graphics of an electronic book."

e. *information that allows encryption and decryption of the electronic book and encrypting and decryption of the encryption and decryption keys*

| Terms & Patent(s) | Discovery's Proposed Construction | Amazon's Proposed Construction |
|---|---|---|
| information that allows encryption and decryption of the electronic book and encryption and decryption of the encryption and decryption keys '851 Patent | No construction necessary. | "information that allows each of the following: (1) encryption of the electronic book, (2) decryption of the electronic book, (3) encryption of the encryption key, (4) decryption of the encryption key, (5) encryption of the decryption key, and (6) decryption of the decryption key" |

Discovery argues that Claim 96 of the '851 patent requires "information that allows encryption and decryption of the electronic book and encryption and decryption of the encryption and decryption keys," which should have plain and ordinary meaning that is apparent to laypersons. (*See* Pl. Br. 28.) As the terms "electronic book," "encryption key," and "decryption key" are construed, no construction is necessary here. (*Id.*)

Amazon contends, however, that Claim 96 requires six specific functions stated above. Claim 96 of the '851 Patent claims an e-book viewer that receives an e-book from a party and displays that e-book once received. (*See* Def. Br. 25.) In doing so, Claim 96 "includes information that allows encryption and decryption of the electronic book and encryption and decryption of encryption and decryption keys." (*Id.* (citing '851 patent).) Amazon argues that where there are six separate functions to be understood from one-dense phrase, a lay jury would not be confused by its construction, but in fact would help to clarify the explicit functions of Claim 96. (*Id.* at 26.)

Discovery's patent language is not any more confusing than Amazon's proposed language. The original text is favored where proposed text does not further clarify the language. What may make reading

of the language easier is to add a comma. Thus, the Court will adopt the original text with the addition of a comma: "information that allows encryption and decryption of the electronic book, and encryption and decryption of the encryption and decryption keys."

### f. *key generator*

| Terms & Patent(s) | Discovery's Proposed Construction | Amazon's Proposed Construction |
|---|---|---|
| key generator | "a key generation process implemented using hardware or software, or a combination thereof" | "a process that creates encryption and decryption keys used to encrypt and decrypt an electronic book" |
| '851 Patent | | |

A "key generator" is used by the e-book viewer to "generate encryption and decryption keys." (*See* Def. Br. 26 (citing Claim 96, '851 Patent).) For one of ordinary skill to understand the claims and corresponding specifications, one must also know that the "key generator," "generates keys used to encrypt and decrypt" the e-book for the "information stream between the home system and operations center." ((Pl. Br. 29) (citing *Vitronics,* 90 F.3d at 1584).)

Discovery argues that its construction, "using hardware or software, or a combination thereof": (1) is best reflected by the intrinsic evidence; and (2) does not impute any unsupported limitations on the terms. (*See* Pl. Br. 29.) First, Discovery asserts that where the specification of Claim 96 of the '851 Patent provides that security measures, such as encryption or decryption:

> Performed by the operations center 250 or the home system 258 may be done in hardware ... [or] may be done in software .... In yet another alternative, a portion of security related activities may be done in software using a standard or

secure processor while the remaining portion done in hardware via a specialized processor.

(*See* Pl. Br. 29 (citing '851 Patent at 50:1–12).)

Further, Discovery contends that Amazon's construction is improper because (1) its construction language is redundant with the "key generator" term, which already includes the encryption/decryption keys and process; (2) the patentee did not intend to "require that the generated keys be 'used to encrypt and decrypt" an e-book, if so he would have stated so;[4] and (3) the specification does not limit the transactions to solely for e-book information (e.g., generator keys can encrypt/decrypt other information, such as associated metadata headers). (*Id.* 30.)

Contrarily, Amazon argues that the intrinsic evidence, the patent specification, requires its construction of key generator. Claims 3 and 5 of the '851 Patent which rely on Claim 1 of the '851 Patent, specifically state that the key generator generates a "symmetric key" that encrypts (and decrypts) e-books. Amazon argues that the specifications in the '851 Patent support its contention that key generators are designed to encrypt and decrypt e-books. (*See* Figure 24(A), '851 Patent (displaying a key generator in the encryption and decryption process via use of a transaction symmetric key).)

Further, Amazon disputes Discovery's third contention. Amazon asserts that simply because a key generator's term is construed as being used to encrypt or decrypt an e-book, does not "mean that it cannot also separately generate other keys used to encrypt and decrypt other information." (*See* Def. Br. 28.)

---

4. *See Hoganas AB v. Dresser Industries, Inc.,* 9 F.3d 948, 951 (Fed.Cir.1993) (declining to incorporate unstated limitations that could have been added by patentee, but were not).

Although Discovery's definition is reflective of the intrinsic evidence of the patent, Amazon correctly points out that the passage of its '851 patent that Discovery relies on for its definition is not a portion of the patent dealing with the key generator. However, this claim term does not seem to need construction. A layperson would likely understand that a "key generator" is a process that generates keys. Thus, the Court will not define "key generator."

### g. list of titles of available electronic books/list of titles of available books

| Terms & Patent(s) | Discovery's Proposed Construction | Amazon's Proposed Construction |
| --- | --- | --- |
| list of titles of available electronic books | No construction necessary. | "list of titles of all books for which the text associated with the electronic book is available for transmission" |
| '851 Patent list of titles of available books '690 Patent | | |

Discovery argues that (1) "list of titles of available books" need not be construed; (2) "list of titles of available electronic books" need not be construed; (3) "available" is already defined and can be construed by its plain and ordinary meaning; and (4) "available" should not be construed as "all" as "all" creates an additional, improper limitation. See SuperGuide Corp. v. DirecTV Enterprises, Inc., 358 F.3d 870, 875 (Fed.Cir.2004) ("[I]t is important not to import into a claim limitations that are not part of the claim."). Further, Discovery argues that Claim 1 of the '851 Patent requires "creating a list of titles of available electronic books" which is the same a the book definition and needs no further construction.

Discovery argues that "list of titles of available books" means just that, "creating a list of titles of available books wherein a book is available if the text associated with the book is available for transmission."

(See Pl. Br. 13 (citing '690 Patent at 25:4–6) (noting that the "available books may comprise books related to a particular category—not all available books").)

Amazon argues, on the other hand, that where the claims "must be read in view of the specification, of which they are a part" the specification requires that the claim be read as "a list of titles of all books for which the test associated with the electronic book is available for transmission." (See Def. Br. 29 (citing Phillips, 415 F.3d at 1315).) Amazon relies on Figure 10 of the '851 Patent to demonstrate that "all books available from the system must be displayed." (Id. 30 (citing Figure 10 of the '851 Patent specification that state "[i]nformation requests received from the viewer 266 generally fall into three categories: (1) directory data of books stored in the library 262, (2) index of all available books on the system, and (3) requests for a specific book (step S700)").)

Amazon's suggested definition begins with "a list of titles of all books" but Amazon's argument that its construction is appropriate is based on a figure which states "index of all books," not "a list of titles." While this does not seem to be a big difference, it is. Discovery is arguing that Amazon's construction effectively precludes the transmission of lists based on categories, and Discovery is right. Discovery's patent clearly contemplates sending lists based on categories as evidenced in Figure 14e of Discovery's '851 patent. Additionally, the plain language is clear and Amazon's construction would lead to redundant language. Thus, the Court will not define this term.

### 2. Amazon Patents: '141 and '133 Patents

There are nine disputed terms for Amazon's '141 and '133 Patents. The parties'

proposed term constructions are as follows:

| Terms & Patent(s) | Amazon's Proposed Construction | Discovery's Proposed Construction |
|---|---|---|
| associate registration system<br><br>'141 Patent | "software/hardware used in registering associates" | "enrollment software running on the merchant's Web site" |
| associate enrollment system<br><br>'141 Patent | "software/hardware used in enrolling associates" | "enrollment software running on the merchant's Web site" |
| compensation system<br><br>'141 Patent | "software/hardware used in compensating associates" | "software running on the merchant's Web site for crediting associates for referrals" |
| online registration system<br><br>'141 Patent | "software/hardware used in registering associates online" | "enrollment software running on the merchant's Web site that sends an application document from the merchant's Web server to the enrolling associate's Web browser configured to be returned to the merchant's Web server upon completion" |
| referral processing system<br><br>'141 Patent | "software/hardware used in processing referrals" | "software running on the merchant's Web site that identifies the associate who referred the customer to the merchant Web site" |
| report generation system<br><br>'141 Patent | "software/hardware used in generating feedback reports" | "report generation software running on the merchant's Web site that uses information stored by the merchant Web site" |
| web site<br><br>'133 Patent | "A computer system that serves informational content over a network using the standard protocols of the World Wide Web. Typically, a Web site corresponds to a particular Internet domain name, such as 'amazon.com,' and includes the content associated with a particular organization. As used herein, the term is generally intended to encompass both (i) the hardware/software server components that serve the informational content over the network, and (ii) the 'back end' hardware/software components, including any non-standard or specialized components, that interact with the server components to perform services for Web site users." | "a computer system that serves informational content over a network using standard Internet protocols and corresponding to a particular Internet domain name, such as 'amazon.com,' and which encompasses the hardware and software server components that serve the informational content and the hardware and software components that interact with the server components to perform additional Web site functions" |
| request message<br><br>'141 Patent | No construction needed.<br><br>If construed: "communication requesting a Web page corresponding item offered for sale" | "a uniform resource locator address that includes the address for the item's to an product detail page on the merchant's Web site" |
| Determining ... compensation / Determines ... compensation<br><br>'141 Patent | No construction needed. | "calculating/ calculates a proper amount of compensation" |

#### a. The "System Terms"

For all of the "system terms," Discovery adds in its definition the language "software running on the merchant's Web site" to each term. Amazon argues that Discovery attempts to improperly limit the "system terms" from specific embodiments of the inventions. However, Amazon avers

that the '141 Patent specification "explicitly precludes such a limitation" by stating that a " 'system' may be its own computer system or site, distinct from the merchant's site." (*See* Amazon Resp. 3–4.)

Amazon argues that its constructions are in accordance with the claims, specification, and ordinary meaning of the terms. Amazon collectively argues that Discovery's construction as to all the "system terms" are improper because (1) they limit the claims to "software running on the merchant's Web site"; and (2) individualized flaws for each "system term" exist (as dealt with below). Discovery, however, asserts that each term requires an independent construction. (*See* Disc. Resp. 13.)

### i. *System terms and proposed construction*

| Terms & Patent(s) | Amazon's Proposed Construction | Discovery's Proposed Construction |
|---|---|---|
| associate registration system<br>'141 Patent | "software/hardware used in registering associates" | "enrollment software running on the merchant's Web site" |
| associate enrollment system<br>'141 Patent | "software/hardware used in enrolling associates" | "enrollment software running on the merchant's Web site" |
| compensation system<br>'141 Patent | "software/hardware used in compensating associates" | "software running on the merchant's Web site for crediting associates for referrals" |
| online registration system<br>'141 Patent | "software/hardware used in registering associates online" | "enrollment software running on the merchant's Web site that sends an application document from the merchant's Web server to the enrolling associate's Web browser configured to be returned to the merchant's Web server upon completion" |
| referral processing system<br>'141 Patent | "software/hardware used in processing referrals" | "software running on the merchant's Web site that identifies the associate who referred the customer to the merchant Web site" |
| report generation system<br>'141 Patent | "software/hardware used in generating feedback reports" | "report generation software running on the merchant's Web site that uses information stored by the merchant Web site" |

### ii. *The addition of the language, "software running on the merchant's web site"*

■■■■■ Amazon asserts that Discovery's constructions for all the "system terms" immediately fails because it impermissibly limits them to "software running on the merchant's Web site." (*See* Amazon Br. 16.) Amazon argues that the claims need not be construed because a jury could readily determine that the claims "already describe these various 'systems' " that include both hardware and software system components. (*Id.* at 17 n. 10.)

Specifically, Amazon asserts four flaws with Discovery's proposed construction it construes as a claim limitation by limiting the terms to only "software," the merchant's Web site, or any one Web site. (*Id.* at 19.) First, Amazon avers that Discovery's limitation cut against the "words of the claims themselves." *See Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 457 F.3d 1293, 1301 (Fed.Cir.2006) ((citing *Phillips*, 415 F.3d at 1312) ("claim construction must begin with the words of the claims themselves.")). For example, by limiting the term "compensation system" to "software," Discovery did not "begin with the words of the claim themselves."

Second, Amazon argues that the "system" definitions themselves preclude a construction limited to "software." (*Id.* (noting that the claims explicitly include a

Web site / "Web site system" and systems not part of the Web site, thus demonstrating that they are not limited to "software")); *see also NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1300 (Fed. Cir.2005) ("Nothing in the claim suggests that 'a plurality of originating processors' defines a genus .... Instead, these limitations are used as three separate, independent limitations to describe the various constituent components."). Here, Amazon argues that the "Web site" and corresponding "systems" are "various constituent components" and "cannot be required to be a part of (or running on) the Web site system." (*See* Amazon Br. 21.)

Third, Amazon avers that Discovery's construction cuts against the explicit specification because the terms function by running on the merchant's Web site and other web sites. (*Id.* 22.) The '141 Patent specification provides:

> Although the automated enrollment function is preferably handled by the same computer system that handles the referral processing function, these functions could be performed by dedicated, physically distinct computer systems or sites.

((*See* '141 Patent, 10:24–28); *see also* '141 Patent 9:61 (refers associate to access "merchant Web site 106 and the enrollment function," the latter of which is performed on each user's website).)

Fourth, Amazon contends that Discovery's limitation is inconsistent with the prosecution history. In this vein, Amazon avers that Discovery's construction contradicts the intention of the inventors who specifically did not limit claims to "software running 'on the merchant's Web site.' " *Id.* 25–26 (noting that Claim 31 of the '141 Patent limits the "systems" to "run on a common World Wide Web site"). Further, Amazon points to independent and dependent claims that function to limit some of the terms in specific ways. *See*

*Dow Chem. Co. v. United States*, 226 F.3d 1334, 1341–42 (Fed.Cir.2000) (explaining that claims are presumed to have different scope, and an independent claim is broader than dependent claims).

On the other hand, Discovery argues that the entirety of Claim 36's specification supports its construction as "nothing ... contemplates a different implementation" from software running on a merchant's Web site. Discovery points to the "Abstract" and "Summary of the Invention" to support its contention that Amazon reads the term too broadly. See Disc. Resp. 14 (noting that Figure 1, '141 Patent at 6:2–4 refers to all embodiments); *see C.R. Bard, Inc. v. U.S. Surgical Corp*, 388 F.3d 858, 864 (Fed.Cir.2004) (emphasizing statements regarding nature of the overall invention from the Summary of Invention).

Although Discovery points to portions in Amazon's patents that support its inclusion of "on the Merchant's Web site" the support is tenuous. The language that Discovery points to is in the Abstract and Summary of the Invention sections. Also, Discovery's arguments seem tailored to summary judgment instead of claim construction. Discovery's construction also defines the terms too narrowly by only using "software" and "on the Merchant's website." However, Amazon's proposed construction includes the vague term "software/hardware." Thus, the Court will adopt Amazon's construction but with the substitution of "and" for the "/".

b. *web site*

| Terms & Patent(s) | Amazon's Proposed Construction | Discovery's Proposed Construction |
|---|---|---|
| **web site** | "A computer system that serves informational content over a network using the standard protocols of the World Wide Web. | "a computer system that serves informational content over a network using standard Internet protocols and corresponding to a |

> Typically, a Web site corresponds to a particular Internet domain name, such as 'amazon.com,' and includes the content associated with a particular organization. As used herein, the term is generally intended to encompass both (i) the hardware/software server components that serve the informational content over the network, and (ii) the 'back end' hardware/software components, including any non-standard or specialized components, that interact with the server components to perform services for Web site users."

> particular Internet domain name, such as 'amazon.com,' and which encompasses the hardware and software server components that serve the informational content and the hardware and software components that interact with the server components to perform additional Web site functions"

'133 Patent

■ Amazon argues that its construction of "web site" is proper based on (1) the definition in the Patent itself; (2) intrinsic evidence (i.e., specialization and prosecution histories); and (3) the plain and ordinary meaning of the term. Specifically, Amazon asserts that where the '141 Patent specification explicitly provides a detailed description of web site, no further construction of the term is warranted. (*See* Def. Resp. 12 (citing "Glossary of Terms and Acronyms" list, '141 Patent 4:27–5:67); *see Vitronics*, 90 F.3d at 1582 (holding that definitions in patents control).)

Amazon argues that web site need not be construed, and argues that the exact definition as provided in the patent should apply, whereby web site was defined as:

> A computer system that serves informational content over a network using the standard protocols of the World Wide Web. Typically, a Web site corresponds to a particular Internet domain name, such as 'amazon.com,' and includes the content associated with a particular organization. As used herein, the term is generally intended to encompass both (i) the hardware/software server components that serve the informational content over the network, and (ii) the 'back end' hardware/software components, including any non-standard or specialized components, that interact with the server components to perform services for Web site users.

*See* '141 Patent, 5:5–14; *see Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed.Cir.1998) ("[A] patent applicant has elected to be a lexicographer by providing an explicit definition in the specification for a claim term ... the definition selected by the patent applicant controls.")

Therefore, as dictated by *Renishaw*, where a patent applicant provides an explicit definition, that definition must be applied by the Court. 158 F.3d at 1250; *accord Phillips*, 415 F.3d at 1316 (citing *Innova/Pure Water, Inc. v. Safari Water Filtration Sys.*, 381 F.3d 1111 (Fed.Cir. 2004) (It is a "bedrock principle" of patent law that "the claims of a patent define the invention to which the patentee is entitled the right to exclude.")). However, a patent lexicography must also appear "with reasonable clarity, deliberateness, and precision" prior to affecting the claim. *Renishaw*, 158 F.3d at 1249 (quoting *In re Paulsen*, 30 F.3d 1475, 1480 (Fed.Cir. 1994)).

Discovery, in opposition, argues that Amazon's construction of web site is improper because (1) Amazon's definition of web site is vague and imprecise and thus not controlling; (2) '141 Patent's specification supports deleting "generally intended" and "typically" and requiring both "hard-

ware and software." (*See* Disc. Resp. 36–38.)

While Amazon provided a definition in the patent itself and thus, deserves deference, Amazon's definition includes wording that is not sufficiently precise, for example: "typically," "generally intended to," and "hardware/software." Thus, the Court will adopt a definition that is a fusion of the two: "A computer system that serves informational content over a network using the standard protocols of the World Wide Web. A Web site corresponds to a particular Internet domain name, such as 'amazon.com,' and includes the content associated with a particular organization. As used herein, the term encompasses both (i) the hardware and software server components that serve the informational content over the network, and (ii) the 'back end' hardware and software components, including any non-standard or specialized components, that interact with the server components to perform services for Web site users."

### c. *request message*

| Terms & Patent(s) | Amazon's Proposed Construction | Discovery's Proposed Construction |
| --- | --- | --- |
| request message | No construction needed. | "a uniform resource locator address that includes the address for the item's product detail page on the merchant's Web site" |
| '141 Patent | If construed: "communication requesting a Web page corresponding to an item offered for sale" | |

■ Amazon contends that Claim 1 uses "request message," should be construed as "communication requesting a Web page corresponding to an item offered for sale," which comports with the surrounding claim language and summarizes what is being requested—a Web page corresponding to the "item identifier." (See Amazon Br. 37.)

Discovery argues that the "request message" is a URL based on Amazon's repeated reference to a "referral link" in its specifications which seems to be synonymous with the "request message" as described in the claim. However, this seems incorrect. The referral link seems to be what the customer clicks on to generate the "request message." Thus, as Amazon's proposed construction seems to be supported by the claim language and specifications, the Court will adopt Amazon's definition.

### d. *determining ... compensation/determines ... compensation*

| Terms & Patent(s) | Amazon's Proposed Construction | Discovery's Proposed Construction |
| --- | --- | --- |
| Determining ... compensation / Determines ... compensation | No construction needed. | "calculating/ calculates a proper amount of compensation" |
| '141 Patent | | |

Amazon contends that Claims 17 and 36 of the '141 Patent involve determining the compensation system for the associates who refer customers who purchase items off the merchant's web site. As such, the claim is particularly clear as it uses common language known by laypersons. Amazon argues Discovery's construction is improper by demonstrating that there is permissible language used as to whether to include calculating an amount in the compensation and requiring that the calculation must occur. The patent refers to the calculation as permissive and Discovery's definition would improperly require it.

On the other hand, Discovery points to the specifications to show that Amazon repeatedly used "calculated" where they were referring to the process of "determining compensation." However, the

specifications do not limit it to "calculated" only, so Amazon's broader language should control. Although it is hard to see how "determine" would mean anything other than "calculate," the claim language should be used if its meaning is plain and ordinary. Thus, the Court will not define this term.

## IV. CONCLUSION

For the reasons stated above, the Court will adopt the claim term definitions below. An appropriate order will follow.

### DISCOVERY PATENTS

| Terms & Patent(s) | Construction |
| --- | --- |
| broadcast<br>'851 Patent | sent to multiple recipients |
| book<br><br><br><br><br><br><br><br>'690 Patent<br>electronic book<br>'851 Patent | an electronic version of the textual or graphical information contained in a work such as a novel, encyclopedia, article, magazine, newspaper, catalogue, periodical, manual, speech, law, court decision, or testimony |
| encrypting the selected electronic book<br><br>'851 Patent | encrypting data representing the text and graphics of an electronic book |
| decrypting the encrypted selected electronic book<br><br><br>'851 Patent | decrypting the encrypted data representing text and graphics of an electronic book |
| information that allows encryption and decryption of the electronic book and encryption and decryption of the encryption and decryption keys<br><br>'851 Patent | information that allows encryption and decryption of the electronic book, and encryption and decryption of the encryption and decryption keys |
| key generator<br>'851 Patent | No construction needed. |
| list of titles of available electronic books<br>'851 Patent | No construction needed. |
| list of titles of available books<br>'690 Patent | |

### AMAZON PATENTS

| Terms & Patent(s) | Construction |
| --- | --- |
| associate registration system<br><br><br>'141 Patent | software and hardware used in registering associates |
| associate enrollment system<br>'141 Patent | software and hardware used in enrolling associates |
| compensation system<br><br><br>'141 Patent | software and hardware used in compensating associates |
| online registration system<br><br><br>'141 Patent | software and hardware used in registering associates online |
| referral processing system<br><br>'141 Patent | software and hardware used in processing referrals |
| report generation system<br><br><br>'141 Patent | software and hardware used in registering associates |
| web site<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>'133 Patent | A computer system that serves informational content over a network using the standard protocols of the World Wide Web. A Web site corresponds to a particular Internet domain name, such as 'amazon.com,' and includes the content associated with a particular organization. As used herein, the term encompasses both (i) the hardware and software server components that serve the informational content over the network, and (ii) the 'back end' hardware and software components, including any non-standard or specialized components, that interact with the server components to perform services for Web site users |
| request message<br><br><br>'141 Patent | communication requesting a Web page corresponding to an item offered for sale |
| Determining ... compensation/ Determines ... compensation<br>'141 Patent | No construction needed. |

A computer system that serves informational content over a network using the standard protocols of the World Wide Web. A Web site corresponds to a particular Internet domain name, such as 'ama-

zon.com,' and includes the content associated with a particular organization. As used herein, the term encompasses both (i) the hardware and software server components that serve the informational content over the network, and (ii) the 'back end' hardware and software components, including any non-standard or specialized components, that interact with the server components to perform services for Web site users

## ORDER

AND NOW, this 4th day of February, 2011, for the reasons set forth in the Court's accompanying memorandum dated February 4, 2011, it is ORDERED that the disputed claim terms shall be defined as follows:

### DISCOVERY PATENTS

| Terms & Patent(s) | Construction |
| --- | --- |
| broadcast<br>'851 Patent | sent to multiple recipients |
| book<br>'690 Patent<br>electronic book<br>'851 Patent | an electronic version of the textual or graphical information contained in a work such as a novel, encyclopedia, article, magazine, newspaper, catalogue, periodical, manual, speech, law, court decision, or testimony |
| encrypting the selected electronic book<br>'851 Patent | encrypting data representing the text and graphics of an electronic book |
| decrypting the encrypted selected electronic book<br>'851 Patent | decrypting the encrypted data representing text and graphics of an electronic book |
| information that allows encryption and decryption of the electronic book and encryption and decryption of the encryption and decryption keys<br>'851 Patent | information that allows encryption and decryption of the electronic book, and encryption and decryption of the encryption and decryption keys |
| key generator<br>'851 Patent | No construction needed. |
| list of titles of available electronic books<br>'851 Patent | No construction needed. |
| list of titles of available books<br>'690 Patent | |

### AMAZON PATENTS

| Terms & Patent(s) | Construction |
| --- | --- |
| associate registration system<br>'141 Patent | software and hardware used in registering associates |
| associate enrollment system<br>'141 Patent | software and hardware used in enrolling associates |
| compensation system<br>'141 Patent | software and hardware used in compensating associates |
| online registration system<br>'141 Patent | software and hardware used in registering associates online |
| referral processing system<br>'141 Patent | software and hardware used in processing referrals |
| report generation system<br>'141 Patent | software and hardware used in registering associates |
| web site<br>'133 Patent | A computer system that serves informational content over a network using the standard protocols of the World Wide Web. A Web site corresponds to a particular Internet domain name, such as 'amazon.com,' and includes the content associated with a particular organization. As used herein, the term encompasses both (i) the hardware and software server components that serve the informational content over the network, and (ii) the 'back end' hardware and software components, including any non-standard or specialized components, that interact with the server components to perform services for Web site users |
| request message | communication requesting a Web page corresponding to an item offered for sale |

'141 Patent

| Determining ... compensation/ Determines ... compensation | No construction needed. |

'141 Patent

**AND IT IS SO ORDERED.**