**In re David C. PAULSEN.**

**No. 94–1012.**

United States Court of Appeals, Federal Circuit.

Aug. 3, 1994.

J. Georg Seka, Attorney, Townsend and Townsend Khourie and Crew, San Francisco, CA, argued, for appellant.

Harris Pitlick, Attorney, Com'r of Patents and Trademarks, Arlington, VA, argued, for appellee. With him on the brief was Fred E. McKelvey.

Before NIES, MICHEL, and LOURIE, Circuit Judges.

LOURIE, Circuit Judge.

AST Research, Inc., (AST) [1] appeals from the July 23, 1993 decision of the United States Patent and Trademark Office (PTO) Board of Patent Appeals and Interferences sustaining the final rejection upon reexamination of claims 1–4, 6, 9–12, and 18–34 of U.S. Patent 4,571,456. We affirm.

---

1. AST Research is the current record owner of the patent in issue.

## BACKGROUND

The '456 patent, entitled "Portable Computer," was issued to David C. Paulsen *et al.*, on February 18, 1986. The claims of the patent are directed to a portable computer contained within a compact metal case.[2] A salient feature of the claimed invention is its "clam shell" configuration, in which the computer's display housing is connected to the computer at its midsection by a hinge assembly that enables the display to swing from a closed, latched position for portability and protection to an open, erect position for viewing and operation. Computers consistent with this design are commonly referred to as "laptop" computers.

On April 27, 1990, and subsequently on June 12, 1990 and October 22, 1990, requests were filed in the PTO for reexamination of the '456 patent. *See* 35 U.S.C. § 302 (1988). The requests were consolidated into a single proceeding for the reexamination of claims 1 through 34.[3] On August 9, 1991, the examiner issued a final office action in the reexamination rejecting claims 1–4, 6, 7, 9–12, and 18–34. Independent claims 1 and 18 were rejected under 35 U.S.C. § 102(b) (1988) as being anticipated by Japanese Application 47–14961 to Yokoyama. Additionally, claims 1–4, 6, 7, 9–12, and 18–34 were rejected under 35 U.S.C. § 103 (1988) as being obvious over the Yokoyama reference in view of other prior art.[4]

On appeal, the Board affirmed the examiner's rejections except as to claim 7. In sustaining the rejections of claims 1 and 18, the Board rejected the appellant's[5] contention that Yokoyama is not a proper prior art reference under sections 102 or 103. The Board concluded that although Yokoyama discloses a calculator, a calculator is a type of computer. The Board also rejected the appellant's argument that Yokoyama is a non-enabling reference. Respecting the § 103 rejection of claims 2–4, 6, 9–12, and 19–34, the Board adopted the examiner's determination that the cited prior art would have suggested the claimed subject matter to a person of ordinary skill in the art.[6]

AST, the present assignee of the '456 patent, now appeals from the Board's decision.

## DISCUSSION

### *Claims 1 and 18*

We first address AST's challenge to the Board's determination that claims 1 and 18 are anticipated by the Yokoyama reference. Anticipation is a question of fact subject to review under the "clearly erroneous" standard. *In re King*, 801 F.2d 1324, 1326, 231 USPQ 136, 138 (Fed.Cir.1986). A rejection for anticipation under section 102 requires that each and every limitation of the claimed invention be disclosed in a single

2. Claim 1 is the broadest claim in the '456 patent and is illustrative of the claimed invention. The claim reads as follows:

1. A portable computer constructed to be contained within an outer case for transport and to be erectable to a viewing and operating configuration for use, said computer comprising

a base,
a display housing,
a top cover,
a rear cover,
hinge means for permitting swinging movement of the display housing about an axis of rotation adjacent the rear end of the display housing and from a closed and latched position of the display housing on the base to an erected position for viewing by an operator, and including stop means for holding the display housing at the desired angle for viewing,
the hinge means being located in a mid portion of the base and wherein the hinge means permit swinging movement of the display housing to an erected position in which

the inner surface of the display housing is held in an upward and rearwardly inclined angle for viewing by an operator in front of the computer, and
including a keyboard in the portion of the base which is exposed by the movement of the display housing to the erected position.

3. As originally issued, the '456 patent contained claims 1 through 19. New claims 20 through 34 were subsequently added during reexamination.

4. Claims 5, 8, and 13–17 were allowed by the examiner in the reexamination proceeding. These claims are not at issue in this appeal.

5. The party in interest during the reexamination proceeding was Grid Systems Corp., the original assignee of the '456 patent.

6. Because the Board adopted the examiner's position as its own, we shall refer to the examiner's findings and conclusions as those of the Board.

prior art reference. *In re Spada*, 911 F.2d 705, 708, 15 USPQ2d 1655, 1657 (Fed.Cir. 1990). In addition, the reference must be enabling and describe the applicant's claimed invention sufficiently to have placed it in possession of a person of ordinary skill in the field of the invention. *Id.*

The Yokoyama reference discloses a desktop calculator contained within a housing having the form of a portable attache case. The front half of the case consists of a lid that is hinged at the midsection of the case. Connected to the inside of the lid is a display which is able to be viewed when the lid is opened to a vertical position. A keyboard is also exposed for operation when the lid is opened. When the device is to be transported, the lid is closed and latched to protect the display and the keyboard. Notwithstanding that Yokoyama discloses a device meeting the express limitations set out in claims 1 and 18 relating to a base, a display housing, a keyboard, etc., AST maintains that the claims are not anticipated by Yokoyama because that reference discloses a calculator, not a computer.[7] AST contends that the Board erred in construing the term "computer" broadly to encompass a calculator such as that disclosed in Yokoyama.

We note at the outset that the term "computer" is found in the preamble of the claims at issue. The preamble of a claim does not limit the scope of the claim when it merely states a purpose or intended use of the invention. *See DeGeorge v. Bernier*, 768 F.2d 1318, 1322 n. 3, 226 USPQ 758, 761 n. 3 (Fed.Cir.1985). However, terms appearing in a preamble may be deemed limitations of a claim when they "give meaning to the claim and properly define the invention." *Gerber Garment Technology, Inc. v. Lectra Sys., Inc.,* 916 F.2d 683, 688, 16 USPQ2d 1436, 1441 (Fed.Cir.1990) (quoting *Perkin–Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 896, 221 USPQ 669, 675 (Fed.Cir.), *cert. denied,* 469 U.S. 857, 105 S.Ct. 187, 83 L.Ed.2d 120 (1984)). Although no "litmus test" exists as to what effect should be accorded to words contained in a preamble, review of a patent

in its entirety should be made to determine whether the inventors intended such language to represent an additional structural limitation or mere introductory language. *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1257, 9 USPQ2d 1962, 1966 (Fed.Cir.1989); *In re Stencel*, 828 F.2d 751, 754, 4 USPQ2d 1071, 1073 (Fed. Cir.1987).

In the instant case, review of the '456 patent as a whole reveals that the term "computer" is one that "breathes life and meaning into the claims and, hence, is a necessary limitation to them." *Loctite Corp. v. Ultraseal Ltd.,* 781 F.2d 861, 866, 228 USPQ 90, 92 (Fed.Cir.1984). Thus, to anticipate claims 1 and 18, the Yokoyama reference must disclose a type of "computer." *See Diversitech Corp. v. Century Steps, Inc.,* 850 F.2d 675, 678, 7 USPQ2d 1315, 1317 (Fed.Cir.1988) (prior art reference must contain preamble limitations). However, to properly compare Yokoyama with the claims at issue, we must construe the term "computer" to ascertain its scope and meaning. Claim construction is a legal question that we address *de novo. See Carroll Touch, Inc. v. Electro Mechanical Sys., Inc.,* 15 F.3d 1573, 1577, 27 USPQ2d 1836, 1839 (Fed.Cir.1993).

Pursuant to its practice of giving claims in a reexamination their broadest reasonable interpretation consistent with the specification, *see In re Etter,* 756 F.2d 852, 858, 225 USPQ 1, 5 (Fed.Cir.1985), the Board construed the term "computer" to include a calculator. The Board's interpretation was supported by authoritative lexicographic sources that confirmed that a calculator is considered to be a particular type of computer by those of ordinary skill in the art. AST alleges that the Board's interpretation was erroneous because it ignores the inventors' own definition of "computer." AST asserts that the specification plainly indicates that the inventors intended to limit the claimed invention to a device having a display with graphics and text capability, sufficient data processing capacity, communication ports, a telephone con-

---

7. AST does not dispute that all the limitations of claims 1 and 18 are otherwise described in the Yokoyama reference.

nection, etc., features normally absent in a calculator.

In an effort to avoid the anticipating disclosure of Yokoyama, AST engages in a *post hoc* attempt to redefine the claimed invention by impermissibly incorporating language appearing in the specification into the claims. Although "it is entirely proper to use the specification to interpret what the patentee meant by a word or phrase in the claim, ... this is not to be confused with adding an extraneous limitation appearing in the specification, which is improper. By 'extraneous,' we mean a limitation read into a claim from the specification wholly apart from any need to interpret ... particular words or phrases in the claim." *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.,* 849 F.2d 1430, 1433, 7 USPQ2d 1129, 1131 (Fed.Cir.), *cert. denied,* 488 U.S. 986, 109 S.Ct. 542, 102 L.Ed.2d 572 (1988). Moreover, when interpreting a claim, words of the claim are generally given their ordinary and accustomed meaning, unless it appears from the specification or the file history that they were used differently by the inventor. *See Carroll Touch,* 15 F.3d at 1577, 27 USPQ2d at 1840.

The term "computer" is not associated with any one fixed or rigid meaning, as confirmed by the fact that it is subject to numerous definitions and is used to describe a variety of devices with varying degrees of sophistication and complexity. However, despite the lack of any standard definition for this ubiquitous term, it is commonly understood by those skilled in the art that "at the most fundamental level, a device is a computer if it is capable of carrying out calculations." *National Advanced Sys., Inc. v. United States,* 26 F.3d 1107, 1111–12 (Fed. Cir.1994). AST cannot dispute that a calculator falls within that basic definition. That a calculator may be a "limited function" computer as opposed to a "full function" computer does not change the fact that it is nonetheless a computer.[8]

Although an inventor is indeed free to define the specific terms used to describe his or her invention, this must be done with reasonable clarity, deliberateness, and precision. "Where an inventor chooses to be his own lexicographer and to give terms uncommon meanings, he must set out his uncommon definition in some manner within the patent disclosure" so as to give one of ordinary skill in the art notice of the change. *See Intellicall, Inc., v. Phonometrics, Inc.,* 952 F.2d 1384, 1387–88, 21 USPQ2d 1383, 1386 (Fed.Cir.1992). Here, the specification of the '456 patent does not clearly redefine the term "computer" such that one of ordinary skill in the art would deem it to be different from its common meaning. The specification merely describes in a general fashion certain features and capabilities desirable in a portable computer. This description, however, is far from establishing a specialized definition restricting the claimed invention to a computer having a specific set of characteristics and capabilities.

We conclude that the Board did not clearly err in determining that the Yokoyama reference meets all the limitations of claims 1 and 18 as properly construed, including the "computer" limitation.

Alternatively, AST asserts that Yokoyama does not anticipate claims 1 and 18 because it is not enabling. AST argues that Yokoyama only discloses a box for a calculator and thus does not teach how to make and use a portable calculator. This argument, however, fails to recognize that a prior art reference must be "considered together with the knowledge of one of ordinary skill in the pertinent art." *In re Samour,* 571 F.2d 559, 562, 197 USPQ 1, 3–4 (CCPA 1978); *see also DeGeorge,* 768 F.2d at 1323, 226 USPQ at 762 (Fed.Cir.1985) (a reference "need not, however, explain every detail since [it] is speaking to those skilled in the art"). As the Board found below, the level of skill to which Yokoyama is addressed was "quite advanced" at the time the '456 patent was filed and that "one of ordinary skill in the art

---

8. We are unpersuaded by the declarations submitted by the appellants which draw a distinction between a calculator and a computer based on comparative functions and capabilities. As the Board correctly concluded, such extrinsic evidence fails to rebut the premise that a calculator is a computer, albeit one with limited functions.

certainly was capable of providing the circuitry necessary to make the device operable for use as a computer." We discern no clear error in the Board's findings and conclude as a matter of law that Yokoyama is sufficiently enabling to serve as a section 102(b) reference.[9] *See Gould v. Quigg,* 822 F.2d 1074, 1077, 3 USPQ2d 1302, 1303–04 (Fed.Cir.1987) (ultimate issue of enablement is one of law based on underlying factual findings).

Accordingly, we affirm the Board's rejection of claims 1 and 18 as being anticipated by Yokoyama. As a result, we need not review the obviousness rejections of these claims. *See In re Baxter Travenol Labs,* 952 F.2d 388, 391, 21 USPQ2d 1281, 1285 (Fed. Cir.1992) ("[S]ince anticipation is the ultimate of obviousness, the subject matter of these claims is necessarily obvious and we need not consider them further."). Additionally, because AST does not argue the patentability of claims 9–12 and 19–27 separately from that of claims 1 and 18, the appeal of these claims also fails. *See In re Albrecht,* 579 F.2d 92, 93–94, 198 USPQ 208, 209 (CCPA 1978); *In re King,* 801 F.2d at 1325, 231 USPQ at 137.

### Claims 2–4, 6, and 28–34

Next, AST challenges the Board's rejection of claims 2–4, 6, and 28–34 on the ground of obviousness. Obviousness is a question of law to be determined from the facts. *In re Fine,* 837 F.2d 1071, 1073, 5 USPQ2d 1596, 1598 (Fed.Cir.1988). Thus, the Board's conclusion of obviousness is reviewed for error as a matter of law, *In re De Blauwe,* 736 F.2d 699, 703, 222 USPQ 191, 195 (Fed.Cir.1984), and underlying factual inquiries are reviewed for clear error, *In re Caveney,* 761 F.2d 671, 674, 226 USPQ 1, 3 (Fed.Cir.1985).

### 1. Non-Analogous Art

AST argues that claims 2, 6, and 28–34, which add particular features to the hinge and latch means of the display housing,[10] were erroneously rejected over non-analogous references directed to hinges and latches as used in a desktop telephone directory, a piano lid, a kitchen cabinet, a washing machine cabinet, a wooden furniture cabinet, or a two-part housing for storing audio cassettes. AST maintains that because the references pertain to fields of endeavor entirely unrelated to computers and are not pertinent to the problems faced by the present inventors, they do not render the claims obvious. It argues that the cited references, dealing with such articles as cabinets and washing machines, do not deal with the particular environment presented in portable computers. This argument rests on too narrow a view of what prior art is pertinent to the invention here.

Whether a prior art reference is "analogous" is a fact question that we review under the "clearly erroneous" standard. *In re Clay,* 966 F.2d 656, 658, 23 USPQ2d 1058, 1060 (Fed.Cir.1992). Although there is little dispute that the prior art references cited here (other than Yokoyama) are not within the same field of endeavor as computers, such references may still be analogous if they are "reasonably pertinent to the particular problem with which the inventor is involved." *Id.; see also Heidelberger Druckmaschinen AG v. Hantscho Commercial Prods., Inc.,* 21 F.3d 1068, 1072, 30 USPQ2d 1377, 1379 (Fed. Cir.1994). The problems encountered by the inventors of the '456 patent were problems that were not unique to portable computers. They concerned how to connect and secure the computer's display housing to the computer while meeting certain size constraints

---

9. We also note that under the enablement standard that AST would have us apply to Yokoyama, the '456 patent itself would be non-enabling. The '456 patent similarly relies on the knowledge and skill of those skilled in the art. If detailed disclosure regarding implementation of known electronic and mechanical components necessary to build a computer were essential for an anticipating reference, then the disclosure in the '456 patent would also fail to satisfy the enablement requirement. *See Constant v. Advanced Micro–*

*Devices, Inc.,* 848 F.2d 1560, 1569, 7 USPQ2d 1057, 1063 (Fed.Cir.1988).

10. Generally, claims 2 and 6, both depending from claim 1, recite torsion spring means and recessed latch means for the display housing, respectively. Claims 28, 29, 30, 33, and 34 are directed to a portable computer having concealed hinges, and claims 31 and 32 recite recessed latch means and retractable legs, respectively.

and functional requirements. The prior art cited by the examiner discloses various means of connecting a cover (or lid) to a device so that the cover is free to swing radially along the connection axis, as well as means of securing the cover in an open or closed position. We agree with the Board that given the nature of the problems confronted by the inventors, one of ordinary skill in the art "would have consulted the mechanical arts for housings, hinges, latches, springs, etc." Thus, the cited references are "reasonably pertinent" and we therefore conclude that the Board's finding that the references are analogous was not clearly erroneous.

## 2. Secondary Considerations

In support of its contention that the Board erred in rejecting claims 2–4, 6, and 28–34 as obvious, AST points to evidence of commercial success, copying, and professional recognition of Grid laptop computers, devices covered by claims 1 and 18 of the '456 patent. For example, from the introduction of their laptop computers in 1983 to the end of 1990, Grid enjoyed cumulative sales of approximately $489 million in addition to licensing royalties of $7.5 million. Grid also received several design awards and exceptional praise from the industry press.

 Although such evidence is indeed impressive, AST has not shown that it is relevant to the claims at issue and thus entitled to weight. When a patentee offers objective evidence of nonobviousness, there must be a sufficient relationship between that evidence and the patented invention. *See Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387, 1392, 7 USPQ2d 1222, 1226 (Fed.Cir.), *cert. denied*, 488 U.S. 956, 109 S.Ct. 395, 102 L.Ed.2d 383 (1988). "The term 'nexus' is used, in this context, to designate a legally and factually sufficient connection between the proven success and the patented invention, such that the objective evidence should be considered in the

determination of nonobviousness. The burden of proof as to this connection or nexus resides with the patentee." *Id.* Here, AST has failed to carry its burden.

AST limits its argument respecting the evidence adduced to demonstrate nonobviousness to laptop computers covered by claims 1 and 18, claims which we have previously concluded are unpatentable under section 102.[11] AST has not established that the commercial success, copying, and professional recognition experienced by Grid laptop computers are probative of the nonobviousness of the inventions of claims 2–4, 6, and 28–34. It has not been shown that such evidence is relevant to a computer within the scope of these claims, *i.e.*, that it is attributable to the inventions of these claims, rather than to extraneous factors such as advertising and marketing or to the features possessed by the computers of claims 1 and 18. Because AST has failed to establish a sufficient legal relationship between the purported evidence of nonobviousness and the claimed invention, evidence pertinent to claims 1 and 18 therefore carries no weight with respect to claims 2–4, 6, and 28–34.

## 3. Obviousness Generally

 Beyond what we have said respecting the applicability of the cited prior art and the asserted evidence of secondary considerations, we have considered AST's basic contention that the prior art does not suggest the invention of the rejected claims and view it to be unpersuasive. In reviewing the Board's obviousness conclusions, we have been guided by the well-settled principles that the claimed invention must be considered as a whole, multiple cited prior art references must suggest the desirability of being combined, and the references must be viewed without the benefit of hindsight afforded by the disclosure. *See Hodosh v. Block Drug Co., Inc.*, 786 F.2d 1136, 1143 n. 5, 229 USPQ 182, 187 n. 5 (Fed.Cir.), *cert. denied*, 479 U.S. 827, 107 S.Ct. 106, 93

---

11. The only evidence connecting the purported commercial success and professional praise with the '456 patent is the declaration of J. Georg Seka, counsel for AST, stating that claims 1 and 18 cover the Grid "Compass" laptop computer and certain models made by Toshiba. Even assuming that a nexus exists as to those two claims, evidence of nonobviousness is irrelevant for patentability purposes when an invention is anticipated under section 102.

L.Ed.2d 55 (1986). We have carefully reviewed the prior art of record and conclude that the Board did not err in rejecting claims 2–4, 6, and 28–34 as having been obvious.

## CONCLUSION

The Board did not clearly err in rejecting claims 1 and 18 as being anticipated by the Yokoyama reference. Consequently, the rejection of claims 9–12 and 19–27 must also be affirmed. The Board did not err in rejecting claims 2–4, 6, and 28–34 as being obvious over Yokoyama and other prior art. Accordingly, we affirm the decision of the Board.

*AFFIRMED.*