NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

(Serial No. 09/401, 939)

**IN RE MICHAEL C. SCROGGIE, MICHAEL E. KACABA, DAVID A. ROCHON, AND DAVID M. DIAMOND**

(Real Party in Interest Catalina Marketing Corporation)

---

2011-1016

---

Appeal from the United States Patent and Trademark Office, Board of Patent Appeals and Interferences.

---

Decided: September 16, 2011

---

RICHARD A. NEIFELD, Neifeld IP Law, PC, of Alexandria, Virginia, for appellants.

RAYMOND T. CHEN, Solicitor, Office of the Solicitor, United States Patent and Trademark Office, of Alexandria, Virginia, for appellee. With him on the brief were JOSEPH G. PICCOLO and WILLIAM LAMARCA, Associate Solicitors.

---

Before RADER, *Chief Judge*, PROST and O'MALLEY, *Circuit Judges.*

Per curiam.

Michael C. Scroggie, Michael E. Kacaba, David A. Rochon, and David M. Diamond ("Scroggie" or "Appellants") appeal the decision of the Board of Patent Appeals and Interferences ("Board") from the U.S. Patent and Trademark Office ("PTO") affirming rejections under 35 U.S.C. §§ 102 & 103 of U.S. Application No. 09/401,939 ("'939 application"). *See In re Scroggie*, No. 2008-004478 (B.P.A.I. August 20, 2010). Because the Board correctly determined that the claims at issue would have been anticipated and obvious to one of skill in the art, this court affirms.

## I.

The '939 application claims a computer implemented method, system, and program product for distributing purchasing incentives to consumers from a main computer to a "personal computer" over a computer network. According to the specification, the invention's cooperative network between retailers and manufacturers was a departure from existing commercially available incentive methods and systems. The '939 application detailed that a consumer will log-in to the incentive system and elect to review offers (e.g., coupons or rebates) from manufacturers; the consumer may also select offers that are accumulated and maintained as a session record.

In the Final Office Action, the PTO rejected claims 32, 33, 35-46, 48-59, 61-71, and 75 under 35 U.S.C. § 102(b) as anticipated by U.S. Patent No. 4,882,675 ("'675 patent"); rejected claims 34, 47, and 60 under 35 U.S.C. § 103(a) as obvious in view of the '675 patent; and rejected claims 72-74 and 76 under 35 U.S.C. § 103(a) as obvious

in view of the combination of the '675 patent and U.S. Patent No. 6,321,208 ("'208 patent").

Claim 32 is representative for issues on appeal and reads as follows.

> A computer implemented method for distributing purchasing incentives to consumers, comprising:
>
> transmitting promotion data identifying a plurality of product discounts from a main computer *to a personal computer over a computer network*;
>
> displaying said plurality of product discounts *at said personal computer* based on said promotion data;
>
> transmitting selection data designating at least one product discount selected from said plurality of product discounts *from said personal computer* to said main computer over said computer network;
>
> generating token data depending on said selection data;
>
> transmitting said token data from said main computer *to said personal computer* over said computer network;
>
> identifying said token data in a retail store in association with items being purchased at said retail store;
>
> determining discount items being purchased corresponding to said at least one product discount from said identified token data; and

> generating a purchase incentive
> based on said discount items.

J.A. 1291 (emphasis added). The Board's rejections turned primarily on its interpretation of the emphasized phrase "personal computer." Scroogie's appeal to this Court also turns on the proper construction of that term.

The Board found that "[t]he ordinary and customary meaning of 'personal computer' is a computer built around a microprocessor for use by an individual." J.A. 26 (citing *American Heritage Dictionary of the English Language* (4th ed. 2000)). The Board noted that the specification of the '939 application did "not define a personal computer" and stated that "absent further definition in the Specification, the [interpretation was] to be guided by how one of ordinary skill would have understood the term." J.A. 29. Based on this definition, the Board found that the computer in the '675 patent fulfilled the ordinary and customary meaning of "personal computer" and determined that "[n]othing in [claim 32] further specifie[d] the protocols used for information transmitted to and from the personal computer, so arguments regarding email and internet connections are simply not commensurate with the scope of the claim." J.A. 29. The Board thus agreed with the examiner's determination that the computer of the '675 patent was a "personal computer." The Board acknowledged that the '675 patent "describe[d] a communication link, [but did] not describe the topology or the protocols employed in the link." J.A. 30. The Board found that the '208 patent was "directed to distributing and generating, at a remote site, product redemption coupons" and determined that it "describe[d] how to implement [the '675 patent's] coupon computer at a different location." J.A. 31. The Board affirmed-in-part the examiner's findings.

In its second decision denying rehearing, the Board noted that Appellants did not "cite[ ] a section of the Specification that actually define[d] the phrase 'personal computer.' The Appellants do not contend otherwise." J.A. 17. The Board located the specific term "personal computer" only twice in the specification, column 1, line 18 and column 18, line 23, and found that these two instances were included within the cited dictionary definition. *Id.* The Board acknowledged that the cited definition included the phrase "as in an office or at home," but determined that it was "not part of the definition, but merely lists exemplary contexts in which personal computers are found." J.A. 18. Accordingly, the Board denied Appellants' request for rehearing. In its third decision, the Board granted the Renewed Petition Under 37 C.F.R. 41.3/1.183 "to the extent that a copy of the relevant dictionary definition [was] enclosed [but] [a]ll other issues raised by the Renewed Petition [were deemed] moot." J.A. 11.

Scroggie appeals the claim rejections under 35 U.S.C. §§ 102 & 103 based upon the '675 patent and the '208 patent. These anticipation and obviousness determinations hinge on the Board's interpretation of "personal computer."

## II.

This court reviews factual findings of the Board for substantial evidence. *See In re Gartside*, 203 F.3d 1305, 1312-16 (Fed. Cir. 2000). Claims appealed from the Board receive the broadest reasonable meaning in light of the specification. *See In re Bond*, 910 F.2d 831, 833 (Fed. Cir. 1990). In addition, the applicant may act as a lexicographer by setting out a definition in some manner within the patent disclosure. *See Intellicall, Inc. v. Phonometrics, Inc.*, 952 F.2d 1384, 1387-88 (Fed. Cir. 1992). A

specification or file history must clearly identify an applicant's unique definition. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). "This Court thus reviews the PTO's interpretation of disputed claim language to determine whether it is 'reasonable.'" *In re Suitco Surface, Inc.*, 603 F.3d 1255, 1259 (Fed. Cir. 2010) (quoting *In re Morris*, 127 F.3d 1048, 1055 (Fed. Cir. 1997)). "The presence or absence of a motivation to combine references in an obviousness determination is a pure question of fact." *Gartside*, 203 F.3d at 1316. This court reviews the Board's legal conclusions *de novo.* *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000).

### III.

The first question before this court is whether the Board's interpretation of "personal computer" is reasonable. The representative claim recites only the term "personal computer." Nowhere in the specification does Scroggie act as a lexicographer and define that term. Specifically, the '939 application has no definition or explanation of "personal computer." Scroggie has not ventured to add such a limitation or definition by amendment.

To act as a lexicographer, an applicant must define claim terms with "reasonable clarity, deliberateness, and precision." *In re Paulsen*, 30 F.3d 1475, 1480 (Fed. Cir. 1994). This court has previously determined that it is improper to "attempt to redefine the claimed invention by impermissibly incorporating language appearing in the specification into the claims," but it is proper for the specification of an application to be used "to interpret what the [Appellants] meant by a word or phrase in the claim." *Id.*

While the '939 application discloses an embodiment that envisages use of the Internet and e-mail, that disclo-

sure does not incorporate those limitations into the representative claim. Thus, even if an embodiment of the invention discusses utilizing a "personal computer" in connection with the Internet, the embodiment does not require the "personal computer" by definition to have an Internet connection. "Absent an express definition in their specification, the fact that appellants can point to definitions or usages that conform to their interpretation does not make the PTO's definition unreasonable when the PTO can point to other sources that support its interpretation." *Morris*, 127 F.3d at 1056. In this case, Scroggie cites to claims and parts of the specification to support the premise that the claim term "personal computer" requires access to the Internet and the ability to receive emails. Review of the representative claim in light of subsequent claims, such as claim 44 which adds the limitation that "said computer network comprises one of an intranet and the Internet," provides evidence that the representative claim is broader than the definition proffered by Scroggie because a contrary interpretation by the Board or this court would render some claims duplicative. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1314-15 (Fed. Cir. 2005) (en banc) ("Differences among claims can also be a useful guide in understanding the meaning of particular claim terms. For example, the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim.") (internal citations omitted); *see also Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 837 F.2d 1044, 1054-55 (Fed. Cir. 1988).

This court permits the PTO to use dictionary definitions in tandem with the specification and prosecution history to enlighten the broadest reasonable interpretation of a claim term. This court has previously held that "dictionary definitions are [ ] pertinent." *In re Trans Tex.*

*Holdings Corp.*, 498 F.3d 1290, 1299 (Fed. Cir. 2007) (citing *Philips*, 415 F.3d at 1318). The Board omitted the phrase "as in an office or at home or school" as only exemplary and not part of the definition. This court discerns no error in this omission. As the Board stated, the omitted portion was not part of the definition because the "as in" is not limiting. Thus, the record supports the reasonableness of Board's interpretation.

## IV.

In weighing the anticipation rejections, this court examines claims 32, 33, 35-46, 48-59, 61-71, and 75 and the '675 patent in view of the Board's claim interpretation of "personal computer." A claim is anticipated only if each and every element appears, either expressly or inherently, in a single prior art reference. *Verdegaal Bros. v. Union Oil Co. of Cal.*, 814 F.2d 628, 631 (Fed. Cir. 1987). Anticipation depends on the claim interpretation of "personal computer" because Appellants do not dispute that all other limitations appear in the '675 patent. The Board's definition of "personal computer" includes two relevant parts: (i) a microprocessor that (ii) is usable by an individual.

The '675 patent claims a paperless system (particularly electronic) for distributing, redeeming, and clearing merchandise coupons. '675 patent col.1 ll.6-11. The '675 patent discloses local stations, which may consist, in part, of a local coupon distribution and redemption (CDR) unit that presents coupons to customers via its electronic display. '675 patent col.5 ll.1-7. The CDR unit records the coupons selected by the customers and provides this information to checkout systems of the supermarket. '675 patent col.5 ll.10-15. The specification of the '675 patent describes that customers use the CDR unit in a variety of ways, including personally entering the information for

their completed applications to use the CDR unit. '675 patent col.7 ll.18-29. The CDR unit may be comprised of a microprocessor that controls the performance of the various functions of the CDR unit. '675 patent col.11 l.64–col.12 l.15; '675 patent col.15 l.67–col.16 l.11. The CDR unit may also use a video monitor to present customers with instructions, including directions on use of the CDR unit. '675 patent col.12 ll.49-53. Additionally, a touch screen sensor may enable customers to select coupons and control information on the screens. '675 patent col.13 ll.28-38.

The '675 patent shows a microprocessor, as illustrated by Figure 5 and described in the specification at lines 4 through 7 of column 12. Customers use the '675 invention and thus this reference contains the "usable by an individual" element of the Board's definition. As the Board found, even assuming the CDR unit itself is not the "personal computer," the microprocessor within the CDR unit controlled by individuals satisfies the Board's definition of "personal computer." Thus, the record supports the Board's factual findings. This court discerns no error in the Board's rejection of claims 32, 33, 35-46, 48-59, 61-71, and 75 as anticipated by the '675 patent.

This court examines claims 34, 47, and 60 under the requirements for obviousness in view of the '675 patent. Obviousness requires evaluation of the "differences between the subject matter sought to be patented and the prior art" with an eye on "the subject matter as a whole . . . at the time the invention was made" from the perspective of "a person having ordinary skill in the art." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007) (quoting 35 U.S.C § 103(a)). This inquiry focuses on three basic factual inquiries: "the scope and content of the prior art. . . ; differences between the prior art and the claims at issue. . . ; and the level of ordinary skill in the pertinent

art. . . . ." *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17 (1966).

The Board determined that "Appellants invented ways of delivering customer incentives and other shopping aids to customers with a computer network." J.A. 22. The Board also determined that the '675 patent was "directed to distribution, redemption and clearing of coupons and the like, and in particular how coupons . . . can be distributed, redeemed and cleared electronically" and "describe[d] a communications link." J.A. 26-27. As such, the '939 application and the '675 patent have overlapping scope and content. The Board reviewed the '939 application and the '675 patent and did not note differences between the two that would transcend the basic understanding and knowledge of a person of ordinary skill. On appeal, Appellants have not pointed out in the record any alleged differences to overcome the obviousness determination other than the contention that the term "personal computer" requires email and internet access. As discussed above, the Board's reasonable claim construction places that argument, even if it would present some evidence of nonobviousness, beyond reach.

The record supports the Board's factual findings that underlie its prima facie case of obviousness. Therefore, the Board did not err in rejecting claims 34, 47, and 60 as obvious in view of the '675 patent.

This court also must examine the Board's rejection of claims 72-74 and 76 as obvious in view of the combination of the '675 patent and the '208 patent. The Board found that the '675 patent describes (i) "distribution, redemption and clearing of coupons" that may be selected by a customer at a computer and displayed at checkout and (ii) "a communications link, but does not describe the topology or the protocols employed in the link." J.A. 26-27. To fill

this gap, the Board relied on the '208 patent which "is directed to distributing and generating, at a remote-site product redemption coupons." J.A. 27.

As noted, the '208 patent claims methods and systems for electronic distribution of product redemption coupons to personal computers via a data communications interface within the homes of users. '208 patent Abstract; col.8 ll.52-58. The electronic coupon distribution system of the '208 patent comprises a centrally located repository of electronically stored coupon data. '208 patent col.6 ll.29-34. Further, the public may access this repository via a variety of transmission means, such as the Internet or, as illustrated by Figure 8, digital satellite communication links. '208 patent col.6 ll.39-47; col.13 ll.36-45.

While the '675 patent does not provide the topology or protocols for its "communications link" limitation, the '208 patent does. The '208 prior art uses the Internet, among other options, to link the repository to the user's remote location. Correctly applying the next step of finding a reason to combine the '675 patent and the '208 patent, the Board stated that "[o]ffering multiple venues for product promotion is and has been a fundamental marketing ploy, known to those of ordinary skill in the product promotional arts." J.A. 31 (citing *KSR*, 550 U.S. at 421). The '675 patent and the '208 patent as well as the '939 application discuss distribution of coupons via newspapers, direct-mail, and free standing dispensers in a retail store. '939 application p.1 ll.8-14; p.6 ll.3-8; '675 patent col.1 l.26–col.2 l.51; '208 patent col.1 l.21–col.2 l.41. Further, the '675 patent and the '208 patent as well as the '939 application discuss distributing coupons electronically, at a remote-site, or with a computer network, respectively. Thus, the record contains substantial evidence to support the Board's factual finding that a person of ordinary skill would have the knowledge and motivation, as a relatively

routine matter, to combine the teachings of the '675 patent and the '208 patent.

Claims 72 and 73 place the "personal computer" outside of the retail store or at the user's home. The '208 patent distributes product redemption coupons "to remote personal computers located at users' homes," "a plurality of remote user computers," or "any remote personal computer." '208 patent Abstract; col.4 ll.46-47; col.6 l.66–col.7 l.5. Once again, these disclosures substantially overlap. Therefore, the record supplies substantial evidence to support the Board's factual findings and conclusions concerning claims 72 and 73.

Claims 74 and 76 recite that the "personal computer" logs on to a website, with claim 74 adding that web connection occurs before transmission of promotional data. The '675 patent discloses transmissions of information between a plurality of local stations, which include a CDR unit and an operations center. '675 patent col.4 ll.34-60. The '208 patent discloses the central repository as "an online service provider or web site on the Internet" that allows the user to request coupon data from a centrally located repository which may then transmit coupon data to the remote user computer. '208 patent Abstract; col.4 ll.52-60. The preferred embodiment is an online service provider. '208 patent col.6 ll.29-39. The '208 patent, directed to an "online method," discloses the Internet as the means of communication, meaning that the user must log on to a website before data transmission. '208 patent Abstract; col.6 l.29–col.7 l.5. The communication between components disclosed in the '675 patent combined with the online method disclosed in the '208 patent, at the very least, suggest logging a "personal computer," as defined, on to a website before data transmission. Once again, the record amply supports the Board's factual findings and conclusions concerning claims 74 and 76.

In sum, the Board did not err in concluding that claims 72-74 and 76 were obvious in view of the combination of the '675 patent and the '208 patent. Overall, this court affirms the Board's determination that claims 32-40, 43-53, 56, 58-66, 69, and 71-76 are not patentable.

**AFFIRMED.**